UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                          :
SERGEY VIKTOROVICH PAUSHOK,                               :
                                                          :
                                Plaintiff,                :
                                                          :         20 Civ. 4769 (JPC)
                    -v-                                    :
                                                          :         OPINION
TORDAI GANBOLD et al.,                                   :         AND ORDER
                                                          :
                                Defendants.               :
                                                          :
--------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        This action is Plaintiff Sergey Viktorovich Paushok's latest attempt to disrupt a December

2011 judgment entered by a Russian court against him and in favor of Defendant Gazprombank

JSC ("GPB"), a privately-owned Russian bank, in the amount of $25 million (the "Russian

Judgment").  Paushok unsuccessfully appealed that judgment in Russia.  Then, when GPB brought

an action in the New York Supreme Court to enforce the Russian Judgment, Paushok opposed

enforcement and responded with a host of counterclaims challenging the prosecution of that action.

The New York court granted summary judgment to enforce the judgment, and dismissed Paushok's

counterclaims.  The Appellate Division affirmed those decisions on appeal.  Paushok now turns to

federal court.

        Paushok brings this action against Defendants Tordai Ganbold, Batzorig Baatar, GPB, and

GPB employees Oleg Titarenko, Vladimir Protasov, and Alexander Muranov[1] alleging violations

of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and New York

General Business Law ("N.Y. G.B.L.") § 349.  While Defendants have previewed a number of

---

[1] Defendants GPB, Titarenko, Protasov, and Muranov are referred to collectively herein as
the "GPB Defendants."

defenses in this case—including lack of personal jurisdiction, the *Rooker-Feldman* doctrine, statute of limitations, collateral estoppel, and the inapplicability of N.Y. G.B.L. § 349 to a private contract dispute—the issues currently before the Court are relatively narrow: whether the Court has subject matter jurisdiction over Paushok's FDCPA claim and, if so, whether the Complaint has stated a cause of action under the FDCPA.  For reasons that follow, the Court concludes that Paushok's allegations are sufficient to establish subject matter jurisdiction, but he has failed to plausibly plead a claim upon which relief can be granted because he has not alleged a consumer debt that falls within the scope of the FDCPA.

Accordingly, the Court dismisses with prejudice Paushok's FDCPA claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Further, the Court declines to exercise supplemental jurisdiction over Paushok's remaining state law claim under N.Y. G.B.L. § 349.  This action therefore is dismissed.

## I.  Background

### A.  Factual Allegations

The following facts are taken from the Complaint, exhibits attached to the Complaint, documents incorporated by reference in the Complaint, and certain filings in the underlying state-court litigation of which the Court takes judicial notice.  For purposes of resolving the instant motion only, the Court assumes the truth of the facts alleged in the Complaint and draws all reasonable inferences in Paushok's favor.

#### 1.  The Loan Agreement and the 2006 Surety

Paushok was the CEO of Golden East Mongolia ("GEM"), a Mongolian gold-mining company.  Dkt. 1 ("Complaint" or "Compl.") ¶ 17.  On February 9, 2006, GEM entered into an agreement with GPB, pursuant to which GPB loaned $30 million to GEM with a repayment date of September 30, 2008 (the "Loan Agreement").  *Id.* ¶ 18.  To secure repayment of this loan, GEM

pledged assets as collateral (the "Pledged Assets"), *id.*, and Paushok signed a personal guarantee (the "2006 Surety"), *id.* ¶ 19. The 2006 Surety is central to this dispute and made Paushok personally and secondarily liable for the Loan Agreement in the event that GEM failed to repay the loan on time and the Pledged Assets did not to satisfy GEM's obligations to GPB. *Id.*

The Complaint alleges that, shortly after the signing of the Loan Agreement, the Government of Mongolia enacted laws which adversely impacted GEM's mining operations and profits. *Id.* ¶¶ 21-22. As a result, GEM was no longer able to fulfill its repayment obligations under the Loan Agreement. *Id.* ¶ 23. Paushok alleges that he initiated arbitration under the United Nations Commission on International Trade over these laws, and the Mongolian government responded by seizing GEM's assets and issuing "a baseless arrest warrant" against Paushok, causing him to flee to Russia. *Id.* ¶¶ 26-27.

### 2. Paushok's 2011 Share Purchase Agreement with Ganbold

In April 2011, an agent of the Mongolian Prosecutor-General named "Mr. Byamba" contacted Paushok to discuss the sale of GEM. *Id.* ¶ 28. Paushok met with Byamba and the brother of the Mongolian Prosecutor-General, "Mr. Bator," in Moscow. *Id.* At this meeting, Byamba told Paushok that Paushok "was finished in Mongolia" and that he would need to sell his assets to Bator at a reduced price to make his problems "go[ ] away." *Id.* Facing pressure from Byamba and Bator, Paushok signed an agreement with Bator to sell GEM for $20 million—well below the company's purported worth of over $2 billion. *Id.* ¶¶ 25, 29. Pursuant to this agreement, a payment of $2 million was made to Paushok with the remaining $18 million to be transferred later. *Id.* ¶ 29. Shortly after this agreement was executed, Byamba advised Paushok that the criminal proceedings in Mongolia were dismissed. *Id.* ¶ 30.

In August 2011, Defendant Ganbold contacted Paushok and offered to pay the remaining $18 million to purchase GEM himself. *Id.* ¶ 31. On August 4, 2011, Paushok and Ganbold executed

a new agreement between GEM and Ganbold's wholly owned corporation, Phoenix Sino Limited ("Phoenix Sino"), listing GEM's assets and liabilities, including the Loan Agreement and the 2006 Surety. *Id.* The Complaint asserts that Paushok and Ganbold signed this agreement intending that the liabilities in both the Loan Agreement and the 2006 Surety would be covered in any transfer of the assets and shares of GEM to Phoenix Sino. *Id.* Ganbold also reimbursed Byamba for the $2 million previously paid to Paushok. *Id.* On September 9, 2011, Paushok and Ganbold executed an agreement to transfer the shares and assets of GEM to Phoenix Sino (the "2011 Share Purchase Agreement"), with Ganbold signing the agreement in his capacity as the Managing Director of Phoenix Sino. *Id.* ¶ 32, Dkt. 1, Exh. 2. The Complaint alleges that both Paushok and Ganbold understood that the 2011 Share Purchase Agreement "would resolve any residual obligation [Paushok] had under the [2006] Surety." *Id.*

### 3. The Alleged Scheme Orchestrated by GPB Employees and Ganbold

Around the time when Paushok and Ganbold were negotiating the 2011 Share Purchase Agreement, Paushok introduced Ganbold to certain GPB employees, namely Defendants Titarenko and Protasov, to facilitate the transition of GEM to Ganbold. *Id.* ¶ 33. The Complaint alleges that Ganbold, Titarenko, and Protasov then devised a scheme to evade taxes, shield GEM's assets from being seized in separate litigation in Mongolia, and collect a nonexistent debt from Paushok. *Id.* ¶ 34. According to Paushok, this scheme entailed Ganbold, who inherited GEM's liabilities through the August 4, 2011 agreement with Phoenix Sino and the 2011 Share Purchase Agreement, defaulting on these obligations to GPB, and GPB then suing Paushok under the 2006 Surety in Russia. *Id.* In addition, Ganbold would use a shell company to purchase the debt from GPB, at a reduced price, and sue to enforce that debt in other jurisdictions. *Id.*

According to Paushok, the scheme also entailed GPB influencing the Russian courts and prosecutors to force Paushok into paying the 2006 Surety, despite GPB "being fully aware that

[Paushok] was no longer liable under the [2006] Surety." *Id.* ¶¶ 34, 39. The GPB Defendants in turn would receive a portion of the revenues derived from the sale and transfer of the Pledged Assets, which would make up for the discount at which they sold the debt to Ganbold. *Id.* ¶¶ 34, 47. Thus, as alleged, the scheme entailed Defendants seeking to collect twice on the Loan Agreement—by satisfying GEM's liability through the transfer of the Pledged Assets and simultaneously collecting on the 2006 Surety. *Id.* ¶¶ 47-48, 54-55.

### 4. The Russian Judgment

In September 2011, GPB filed an action in Cheremushki District Court in Moscow to collect the debt under the Loan Agreement, seeking payment of $16.5 million in principal, over $8.5 million in interest, and 60,000 Russian rubles in costs. *Id.* ¶ 39. Paushok asserts that he had no notice of the action, and that the Russian court entered a default judgment, *i.e.*, the Russian Judgment, on December 12, 2011. *Id.* ¶ 40. Paushok alleges that he filed an appeal to the cassation court in Moscow, which affirmed the judgment. *Id.* GPB filed the Russian Judgment with the Russian Federal Bailiff's Service in Moscow and began collecting from Paushok through the Bailiff's Service. *Id.* ¶ 41.

### 5. The New York Action

On January 6, 2015, GPB filed an action in New York State Supreme Court, New York County, seeking to enforce the Russian Judgment (the "New York Action"). *Id.* ¶ 42; *Batbrothers LLC v. Paushok*, No. 150122/2015 (Sup. Ct. N.Y. Cnty.). On June 18, 2015, GPB assigned its rights in the Russian Judgment to BatBrothers LLC. Compl. ¶ 50, Exh. 5. On December 21, 2015, BatBrothers was officially substituted for GPB as plaintiff in the New York Action. *Id.* ¶ 58.

In his Complaint here, Paushok makes numerous allegations concerning the New York Action. For instance, he alleges that BatBrothers—whose nominal CEO is Defendant Baatar—is the aforementioned shell company that Ganbold used to execute his scheme. *Id.* ¶¶ 6, 45; *see id.*

¶ 34.  He also asserts that GEM, through Ganbold, and BatBrothers, through Baatar, reached an agreement in June 2015 to transfer certain equipment and mining licenses from GEM to BatBrothers, which would have fulfilled GEM's debt obligation under the Loan Agreement and thus extinguished any obligation under the 2006 Surety.  *Id.* ¶¶ 53-55, Exh. 6.[2]  Accordingly, the Complaint asserts that "[c]ontinued prosecution of the New York Action was nothing more than a fraud on the New York Supreme Court and on [Paushok]."  *Id.* ¶ 55.

Paushok also identifies several affidavits and documents submitted in the New York Action, which he claims were fraudulent, false, or unsubstantiated.[3]  *Id.* ¶¶ 56-65, 74-76.  For instance, Paushok alleges that Baatar submitted multiple affidavits with materially false statements to the effect that Paushok owed money under the Russian Judgment, *id.* ¶ 65, and that "Ganbold authorized [Baatar] to make these statements in furtherance of the scheme," *id.* ¶ 66.  He further contends that the GPB Defendants "benefit[ed] directly from payments from Paushok in settlement or from executions on the New York Judgment of Enforcement."  *Id.*  Paushok additionally accuses

---

[2]  The  Complaint  therefore  seems  to  advance  two  grounds  for  why  Paushok  has  no remaining liability pursuant to the 2006 Surety: (1) the 2011 Share Purchase Agreement transferred all GEM-related liabilities, including the 2006 Surety, to Phoenix Sino; and (2) in any event, GEM's June 2015 debt settlement agreement with BatBrothers satisfied any outstanding obligations under the Loan Agreement.

[3]  The Complaint mentions: (1) an affirmation by GPB's and BatBrothers' counsel attesting that GEM did not have enough assets to satisfy GEM's debt, *id.* ¶ 56; (2) affidavits by Baatar claiming that BatBrothers was the sole claimant for the Russian Judgment and that Paushok continued to be liable under that judgment, *id.* ¶¶ 61-63; (3) an affidavit by Baatar stating that GEM owed BatBrothers money, *id.* ¶ 74; (4) a document representing that a meeting was held on December 7, 2015, at which GEM and BatBrothers affirmed the existence of an outstanding debt of approximately $27.6 million, *id.* ¶ 75, Exh. 7; and (5) a debt confirmation document purportedly signed by a GEM officer again affirming that there was an outstanding debt between GEM and BatBrothers, *id.* ¶ 76, Exh. 8.  The Complaint also cites a portion of an affirmation from a former GEM executive claiming that the December 7, 2015 meeting never took place and "no act of mutual debt settlement was adopted."  *Id.* ¶ 78.  Paushok additionally relies on letters from the Mongolian Internal Revenue Department in response to requests made by the Mongolian Economics Crime Division, reflecting that no available information was uncovered regarding any debt obligations between BatBrothers and GEM for the period of 2015-2019.  *Id.* ¶¶ 81-82, Exh. 9, Exh. 10.

GPB of exerting "extrajudicial pressure," both before and during the prosecution of the New York Action, by attempting to convince Russian authorities to bring criminal charges against Paushok. *Id.* ¶ 67.

Paushok filed several counterclaims—all related to the enforcement of the Russian Judgment—against BatBrothers in the New York Action, including claims for abuse of process, civil rights violations, intentional infliction of emotional distress, and fraud, which the New York Supreme Court dismissed on June 21, 2018. *Batbrothers LLC v. Paushok*, 109 N.Y.S.3d 837, 2018 WL 3118573 (Sup. Ct. N.Y. Cnty., June 21, 2018). On December 3, 2018, the New York Supreme Court granted BatBrothers' motion for summary judgment, thereby recognizing the Russian Judgment. *Batbrothers LLC v. Paushok*, 2018 N.Y. Slip. Op. 33041, 2018 WL 6309075 (Sup. Ct. N.Y. Cnty., Dec. 3, 2018). On May 16, 2019, the New York Appellate Division, First Judicial Department, affirmed both the grant of summary judgment in favor of BatBrothers and the dismissal of Paushok's counterclaims. *Batbrothers LLC v. Paushok*, 101 N.Y.S.3d 297 (App. Div. 2019). On May 7, 2020, the New York Court of Appeals denied Paushok's motion to appeal that decision. *Batbrothers LLC v. Paushok*, 35 N.Y.3d 902 (2020).

### B.  The Instant Action

Paushok commenced this action on June 22, 2020, asserting one federal claim and one claim under state law. First, Paushok brings a claim pursuant to the FDCPA, 15 U.S.C. § 1692, *et seq*. Compl. ¶¶ 84-96. Paushok alleges that he is a "protected consumer under the FDCPA as a person allegedly obligated to pay a debt," *id.* ¶ 85; that Ganbold, Baatar, Titarenko, Protasov, and Muranov are "debt collectors under the FDCPA as they employ agents of debt collection," *id.* ¶ 86; and that GPB also is a debt collector because it caused BatBrothers to "assume false debt collection activity," *id.* ¶ 87. Paushok asserts that GPB, with Muranov as its agent, harassed him by threatening physical harm, damaging his reputation, and attempting to bring criminal charges

against him.  *Id.* ¶ 88.  As to Baatar and Ganbold, Paushok maintains that their knowing submission of fraudulent documents and affidavits in the New York Action constituted "unfair and unconscionable means under the FDCPA."  *Id.* ¶ 94.

The Complaint also pleads a cause of action under N.Y. G.B.L. § 349, alleging that Defendants, in bringing the New York Action, "engaged in multiple deceptive acts and practices," *id.* ¶ 100, which was part of a "consumer-oriented" scheme that "went well beyond that of a private contractual dispute," *id.* ¶ 98.  The Complaint alleges supplemental jurisdiction over this state claim pursuant to 28 U.S.C. § 1367.  *Id.* ¶ 11.

This case was originally assigned to the Honorable Jed S. Rakoff.  At a conference on August 14, 2020, Judge Rakoff set a bifurcated motions schedule, with the subject matter of Defendants' first round of motions to dismiss limited to (1) whether Paushok's FDCPA claim confers subject matter jurisdiction over this action; and (2) whether the Complaint adequately states a cause of action under the FDCPA.

On August 25, 2020, Baatar filed a motion to dismiss, Dkts. 22, 23, 24, which Ganbold joined, Dkts. 20, 21.  Paushok filed his opposition brief on September 8, 2020.  Dkt. 29 ("Opposition").  Baatar submitted his reply on September 15, 2020, Dkt. 31, with Ganbold joining that submission the same day, Dkt. 32.  On September 29, 2020, this case was reassigned to the undersigned.  After the GPB Defendants were served on September 18, 2020, Dkt. 42, they moved to dismiss on October 28, 2020.[4]   Dkts. 52, 53.  Paushok filed an opposition to this motion on November 11, 2020, Dkt. 54, and the GPB Defendants filed a reply on November 18, 2020, Dkt. 55.

---

[4]  On September 17, 2020, Judge Rakoff granted Paushok's motion to serve the GPB Defendants by email.  Dkt. 33.  As a result, the GPB Defendants appeared in this action several months after Ganbold and Baatar.  Dkts. 43-44.

## II. Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(1)

A court resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) must "accept[ ] as true all material [factual] allegations of the complaint" and "draw[ ] all reasonable inferences in favor of the plaintiff." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016) (second alteration in original) (quoting *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003)).  "Federal district courts have subject-matter jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'"  *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 126 (2d Cir. 2016) (quoting 28 U.S.C. § 1331).  The party asserting the court's federal question jurisdiction "bears the burden of proving that the case is properly in federal court."  *Gilman v. BHS Sec., Inc.*, 104 F.3d 1418, 1421 (2d Cir. 1997).

Once the Complaint alleges a federal question, "'[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.'"  *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (alterations in original) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).  Rather, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Id.* (quoting *Oneida Indian Nation of N.Y. v. Cnty. of Oneida, N.Y.*, 414 U.S. 661, 666 (1974)).  The Supreme Court and the Second Circuit have also emphasized the importance of distinguishing this standard from the one employed under Rule 12(b)(6).  *See Shapiro v. McManus*, 577 U.S. 39, 45 (2015) ("We have long distinguished between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits; only 'wholly insubstantial and frivolous' claims implicate the former." (quoting *Bell*, 327 U.S. at 682-83)); *Gallego*, 814 F.3d at 127-28 (affirming

dismissal of a claim under Rule 12(b)(6) but finding that the court retained jurisdiction over the action because the plaintiff's claims were not "so obviously frivolous that [they] fail[ed] to raise a colorable federal question").

### B.  Federal Rule of Civil Procedure 12(b)(6)

As with a motion under Rule 12(b)(1), a court considering a motion to dismiss for failure to state a cause of action under Rule 12(b)(6) must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks and citation omitted).  The complaint, however, must still plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To pass this plausibility hurdle, the factual allegations must allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires alleging facts that show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[T]he tenet that a court must accept as true" a complaint's factual allegations "is inapplicable to legal conclusions." *Id.* at 678.  It is well settled that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  "Thus, a complaint that offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement' will not survive a motion to dismiss." *Dzganiya v. Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP*, No. 17 Civ. 4525 (GHW), 2018 WL 2247206, at *4 (S.D.N.Y. May 16, 2018) (quoting *Iqbal*, 556 U.S. at 678) (alteration in original).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a Court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,

551 U.S. 308, 322 (2007).  Even when a document is not "expressly incorporated by reference in the complaint," it could be considered at the motion to dismiss stage if it is integral to the complaint and "the complaint relies heavily upon its terms and effect."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citation and internal quotation marks omitted); *accord Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (holding that a legal document will usually be found integral to the complaint when it "contain[s] obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint").

### III. Discussion

Defendants move for dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a cause of action.  They advance substantially the same grounds for dismissal under both rules:  Defendants argue that Paushok's FDCPA claim must be dismissed because (1) the alleged obligation from which this dispute arises is not a "debt" covered by the FDCPA; and (2) none of the Defendants come within the definition of "debt collector" under the FDCPA.  Dkt. 24, Memorandum of Law in Support of Batzorig Baatar's Motion to Dismiss at 13-20.[5]  Defendants further argue that in the event the Court dismisses the FDCPA claim, it should decline to exercise supplemental jurisdiction over Paushok's remaining state law claim.  *Id.* at 22-23.

For reasons mentioned below, although the Court does not find Paushok's FDCPA claim to be so patently without merit as to deprive the Court of subject matter jurisdiction, the Court

---

[5] Aside for minor differences immaterial to the Court's holding, Defendants advance nearly identical arguments in support of their separate motions to dismiss.  Similarly, Paushok made substantially the same arguments opposing those motions.  The Court therefore cites in this Opinion only Baatar's brief in support of his motion to dismiss and Paushok's opposition to Baatar's motion.

dismisses that claim under Rule 12(b)(6) for failing to plead sufficient facts demonstrating that the debt at issue arose from a consumer transaction.  Since Paushok has failed to meet this threshold showing of a debt that falls within the statute, the Court does not reach the question of whether the Complaint properly alleges that Defendants are "debt collectors" for purposes of the FDCPA. Further, the Court declines to exercise supplemental jurisdiction over Paushok's remaining state law claim.

### A.  The Fair Debt Collection Practices Act

To plead a claim under the FDCPA, a plaintiff must allege that: "(1) the plaintiff [is] a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt"; "(2) the defendant collecting the debt is considered a 'debt collector'"; and "(3) the defendant has engaged in any act or omission in violation of the FDCPA requirements." *Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016) (internal quotations and citation omitted), *aff'd*, 707 F. App'x 724 (2d Cir. 2017).

The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).  Interpreting this statutory definition, the Second Circuit has held that "actions arising out of commercial debts are not covered by the protective provisions of the FDCPA." *Goldman v. Cohen*, 445 F.3d 152, 154 n.1 (2d Cir. 2006), *superseded by statute on other grounds as stated in Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212-13 (2d Cir. 2017); *see also Scarola Malone & Zubatov LLP v. McCarthy, Burgess & Wolff*, 638 F. App'x 100, 102-03 (2d Cir. 2016) (summary order) (concluding that debt arising out of transaction related to a business telephone account was commercial debt not covered by the FDCPA); *Spira v. J.P. Morgan Chase*, No. 09 Civ. 8412 (GBD), 2010 WL 3910290, at *4 (S.D.N.Y. Sept. 29, 2010), *aff'd sub nom*, *Spira v. J.P. Morgan*

*Chase & Co.*, 466 F. App'x 20 (2d Cir. 2012) (finding that a promissory note assigned for purposes of a business loan does not constitute a consumer debt under the FDCPA).

### B.  Paushok Adequately Asserts this Court's Federal Question Jurisdiction Under the FDCPA

Starting with the jurisdictional issue, Paushok faces a relatively low burden in pleading a federal claim that confers federal question jurisdiction.  *See Shapiro*, 577 U.S. at 45-46 (collecting cases emphasizing that the claim must be "wholly insubstantial and frivolous," "essentially fictitious," "legally speaking non-existent," or "obviously frivolous" to be dismissed for failing to raise a substantial federal question for purposes of jurisdiction).  A survey of cases where courts have dismissed actions pursuant to Rule 12(b)(1) for failing to raise a colorable federal question reflects this low burden.  *See, e.g.*, *Finger Lake LLC v. Qiang Tu*, No. 19 Civ. 6522 (RA), 2020 WL 2555250, at *6 (S.D.N.Y. May 20, 2020) (finding no federal question jurisdiction existed when the plaintiff alleged that defendant committed immigration fraud but cited no federal statute or constitutional provision in the complaint); *Clark v. Hughes*, No. 17 Civ. 961 (JMA), 2018 WL 5634932, at *3 (E.D.N.Y. Oct. 30, 2018) (finding lack of subject matter jurisdiction where the plaintiffs cited numerous federal statutes but did "not include[ ] any facts in support of such claims and appear[ed] to include th[ose] federal statutes solely as a basis to invoke th[e] Court's federal question subject matter jurisdiction"); *Taldone v. Barbash*, No. 14 Civ. 2147 (SJF), 2014 WL 1800794, at *4 (E.D.N.Y. May 5, 2014) (finding lack of federal question jurisdiction when the plaintiffs alleged only state law claims and added an allegation "that defendants violated unspecified 'Federal Laws'").

The Court finds that Paushok raises a colorable federal question and properly invokes this Court's jurisdiction.  The Complaint alleges that "[Paushok] is a protected consumer under the FDCPA as a person allegedly obligated to pay a debt."  Compl. ¶ 85.  Paushok further includes allegations as to why he believes Defendants are debt collectors whose actions are encompassed

by the FDCPA.  *Id.* ¶¶ 86-87.  The Complaint is also replete with allegations concerning defunct debt, unlawful debt collection activities, and fraudulent affidavits and documents that were submitted at least tangentially in connection with those activities.  *Id.* ¶¶ 1-2, 34-38, 53-67, 74-79, 88-94.  After reviewing these allegations, the Court is unable to conclude that Paushok's FDCPA claim "'is *so patently without* merit as to justify . . . the court's dismissal for want of jurisdiction.'" *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 137 (2d Cir. 2002) (emphasis and alteration in original) (quoting *Duke Power Co. v. Carolina Env't Study Grp.*, 438 U.S. 59, 70 (1978)).

### C.  Paushok Fails to Plead Facts Plausibly Alleging That the Debt at Issue is Covered by the FDCPA

The question of whether Paushok has stated a cause of action under the FDCPA for purposes of Defendants' Rule 12(b)(6) motions, however, presents a separate inquiry.  Having reviewed the Complaint's factual allegations in a light most favorable to Paushok, the Court holds that Paushok has failed to plausibly allege that the debt at issue arose out of a consumer transaction.

"A threshold requirement for claims under the application of a FDCPA claim is whether the alleged conduct was used in connection with the collection of a consumer debt."  *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547, 550-51 (S.D.N.Y. 2013).  To survive a motion to dismiss, a plaintiff must adequately plead that the debt in dispute is an "obligation or alleged obligation of a consumer to pay *money arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction *are primarily for personal, family, or household purposes*, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5) (emphasis added); *see Maleh v. United Collection Bureau, Inc.*, 287 F. Supp. 3d 265, 270-72 (E.D.N.Y. 2018) (dismissing an action for multiple reasons, including the plaintiff's failure to adequately plead facts regarding the debt's nature to establish that it was covered by the FDCPA).

"[M]ere conclusory statements" claiming that the debt arose from a consumer transaction

are not sufficient to meet this requirement. *Scarola Malone & Zubatov LLP*, 638 F. App'x at 102-03 (requiring that a plaintiff's allegations be "supported by facts from which the inference could be reasonably drawn that collection efforts arose from a consumer transaction" and finding that the plaintiff's assertion that the debt was "primarily for personal, family, or household purposes" to be contravened by other facts in the complaint); *see Maleh*, 287 F. Supp. 3d at 271 (collecting cases where "courts have concluded that plaintiffs who recite the statutory definition of 'debt' rather than plead facts regarding the debt's nature have not adequately pleaded an FDCPA claim"); *Sanchez v. Blustein, Shapiro, Rich & Barone LLP*, No. 13 Civ. 8886 (CS), 2014 WL 7339193, at *7 (S.D.N.Y. Dec. 23, 2014) ("Stating that a particular obligation is a 'debt' under the FDCPA is a legal conclusion, so if a complaint does not plead facts that could plausibly lead to the inference that the debt attempted to be collected was a consumer debt, the complaint fails to state a FDCPA claim and must be dismissed." (internal citation omitted)).

The Court must therefore consider the factual allegations contained in the Complaint to determine whether Paushok plausibly alleges the debt being enforced by Defendants is a consumer debt, *i.e.*, whether that obligation arises from a transaction that was primarily for "personal, family, or household purposes." *See* 15 U.S.C. § 1692a(5). In analyzing the nature of the debt, "'[w]hat matters . . . is the asserted basis for the obligation to pay.'" *Scarola Malone & Zubatov LLP*, 638 F. App'x at 102 (quoting *Beauvoir v. Israel*, 794 F.3d 244, 248 (2d Cir. 2015)). This inquiry entails "'examin[ing] the transaction as a whole, paying particular attention to the purpose for which the credit was extended.'" *Cohen v. Potenza*, No. 15 Civ. 3825 (SJF), 2016 WL 6581233, at *8 (E.D.N.Y. Nov. 3, 2016) (quoting *Anderson v. Granoff, Walker & Forlenza, P.C.*, No. 11 Civ. 4178 (DAB), 2012 WL 1066801, at *3 (S.D.N.Y. Mar. 27, 2012), *reconsideration denied*, 2012 WL 1659186 (S.D.N.Y. May 9, 2012)).

A discussed below, notwithstanding the Complaint's conclusory assertion that "[Paushok]

is a protected consumer under the FDCPA as a person allegedly obligated to pay a debt," Compl. ¶ 85, the Complaint's factual allegations instead demonstrate that Paushok's alleged obligation arose from a commercial transaction, and thus outside the purview of the FDCPA.

### 1. Defendants' Alleged Debt-Collecting Activities Stem from Enforcement of the 2006 Surety

To support his FDCPA claim, Paushok primarily relies on Defendants' conduct in filing and pursuing the New York Action.  As demonstrated by the allegations in the Complaint, that proceeding was premised on the Russian Judgment.  *Id*. ¶ 1 ("In the course of an Article 53 proceeding [in the New York Action] to enforce a foreign judgment, Defendants knowingly colluded in the preparation of false documents . . . ."), ¶ 42 (describing the filing of the Complaint in the New York Action as Defendants "seeking enforcement of the Russian Judgment"), ¶¶ 60-62 (describing affidavits submitted by Baatar in the New York Action regarding his rights in the Russian Judgment), ¶ 77 ("In issuing summary judgment in BatBrothers' favor, the New York Supreme Court specifically relied on the 2018 Debt Confirmation, finding the Russian Judgment final . . . ."), ¶ 89 ("Defendant [Baatar] on multiple occasions . . . falsely represented under oath that [Paushok] owed over $25 million under the Russian Judgment, when in fact [Paushok] owed nothing.").[6]

The Russian Judgment, in turn, was premised on the Loan Agreement and the 2006 Surety. *Id*. ¶ 1 ("Defendants are joint tortfeasors who have engaged in a . . . scheme . . . to enforce a defunct

---

[6] The Complaint also accuses GPB of engaging in oppressive conduct by "attempting . . . to bring baseless criminal charges against [Paushok]" in Russia.  Compl. ¶ 67.  This allegation asserts that Defendant Muranov repeatedly attempted to convince either the Russian Bailiff's Service, with which GPB originally registered the Russian Judgment, *id*. ¶ 41, or the Ministry of Internal Affairs to bring a criminal action against Paushok, notwithstanding "the assignment of 'debt' to BatBrothers in June 2015."  *Id.* ¶ 67.  Thus, the only reasonable inference is that GPB's alleged conduct here also related to the Russian Judgment, or possibly the 2006 Surety and the Loan Agreement.  The Complaint provides no facts from which the Court could infer that those actions arose out of any other obligation, let alone a consumer debt.

personal guaranty on [Paushok].”), ¶ 34 (describing alleged plan devised by Ganbold, Titarenko, and Protasov as entailing that “GPB would . . . sue [Paushok] under the Surety in Russia and secure a Russian Judgment”), ¶ 39 “([A]lthough GPB, and at least Defendants Ganbold, Titarenko and Protasov, were fully aware that [Paushok] was no longer liable under the [2006] Surety, GPB filed an action for collection of debt under the Loan Agreement in the Cheremushki District Court in Moscow.”), ¶ 62 (describing an allegedly fraudulent affidavit submitted by Baatar in the New York Action which “claims that because [Paushok] owed monies to GPB under the Loan Agreement, Plaintiff now owed the same monies under the enforcement rights GPB assigned to BatBrothers”).

Thus, the allegations in the Complaint reveal that Paushok’s FDCPA claim ultimately arises from the Loan Agreement and 2006 Surety.  Accordingly, Paushok’s FDCPA claim may proceed only if either of these agreements resulted from a consumer transaction.

### 2. The Loan Agreement and the 2006 Surety Arose from a Commercial Transaction

Paushok’s factual allegations and the exhibits attached to his Complaint, however, demonstrate that the Loan Agreement and the 2006 Surety gave rise to a debt that was commercial in nature.  The Complaint alleges that Paushok entered into the 2006 Surety when he was the CEO of GEM, for purposes of guaranteeing the Loan Agreement.  *Id*. ¶¶ 17-18.  Both the Loan Agreement and the 2006 Surety were contracts that were part of a transaction through which GEM received $30 million from GPB for business purposes.  *Id.* ¶ 18; *see* Dkt. 23 (“Geller Declaration”), Exh. 2 at ¶ 1.3 (“Loan (in the form of a facility) will be provided to the Borrower for acquisition of fixed assets and replenishment of working capital.”); Geller Declaration, Exh. 3 at ¶ 1.1 (“The Guarantor will assume joint and several liability to the Lender for fulfillment by Golden East Mongolia . . . in respect of repayment of the principal and interest payments within the loan period,

specified in the Loan Agreement.").[7]

When deciding whether a debt is a consumer debt and therefore falls within the scope of the FDCPA, courts focus on the purpose of the underlying transaction. *See Cohen*, 2016 WL 6581233, at *8. The purpose of both the Loan Agreement and the 2006 Surety was to provide GEM with finances to run its business operations. In fact, Paushok himself appears to concede the obvious commercial nature of the 2006 Surety when opposing dismissal. *See, e.g.*, Opposition at 1 (acknowledging "that the original debt instrument from [GPB] was executed for a commercial purpose"). Such a loan to a business simply does not fall under the FDCPA. *See, e.g.*, *Pelletier v. Estes Groves, Inc.*, No. 16 Civ. 14499 (KAM), 2018 WL 4208328, at *10 (S.D. Fla. Mar. 28, 2018) ("The [FDCPA] does not apply to a loan for a business because such a loan is not for 'personal, family, or household purposes.'" (citation omitted)). Likewise, numerous courts have concluded that a personal guarantee on a business loan is commercial debt not covered by the FDCPA. *See First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995) (guaranty agreement related to a commercial transaction "was not personal in nature" and "does not constitute a debt as defined by the [FDCPA]"); *Downing v. IOU Cent., Inc.*, No. 19 Civ. 929 (MLB) (JKL), 2019 WL 3502915, at *9 (N.D. Ga. May 29, 2019) ("Plaintiff's argument that his personal money and property is at risk . . . misses the mark. Whether a debt falls under the FDCPA does not depend on the source of a debtor's funds, but rather the nature of the transaction.") *report and recommendation adopted*, 2020 WL 7409660 (N.D. Ga. Mar. 25, 2020); *Pelletier*, 2018 WL 4208328, at *10 ("Because the Promissory Note and Guaranty relate to a business transaction and since the FDCPA does not

---

[7] The Court considers both the Loan Agreement and the 2006 Surety, filed by Baatar in connection with his motion to dismiss, because they are documents "'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss." *Goel*, 820 F.3d at 559. Throughout the Complaint, Paushok claims that the debt which arose from these agreements no longer exists despite Defendants' debt-collection activities. The Complaint therefore relies "upon [the] terms and effect" of these two contracts. *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

apply to a loan for a business purpose, the FDCPA does not apply to the debt at issue."); *Cohen*, 2016 WL 6581233, at \*9 (rejecting argument that a commercial debt that plaintiff contended he personally guaranteed is covered by the FDCPA). Thus, this transaction, which the Russian Judgment was based on and which was later enforced in the New York Action, was commercial in nature.

In an effort to salvage his FDCPA claim, Paushok points to the 2011 Share Purchase Agreement as creating the obligation to pay. *See* Opposition at 6 ("[T]he later 2011 Share Purchase Agreement included the 2006 Surety as its subject matter, and became the basis of the alleged obligation of Mr. Paushok to pay pursuant to the scheme as alleged."). He characterizes the 2011 Share Purchase Agreement as a "payment made to Mr. Paushok personally that Defendants now seek to recover with interest" and one which should be treated as a "consumer debt." *Id.* The Court is unpersuaded for three independent reasons: (1) Defendants' conduct as described in the Complaint was never premised on the 2011 Share Purchase Agreement; (2) the Complaint fails to plead any facts to support Paushok's novel assertion that an obligation arose from the 2011 Share Purchase Agreement; and (3) even if the Court were to find that an obligation arose from that agreement, Paushok's allegations establish that the transaction, like the 2006 Surety, was commercial in nature.

First, as discussed above, the Complaint alleges that the Loan Agreement and the 2006 Surety, via the Russian Judgment, formed the basis of the alleged obligation at issue in this case. Paushok's suggestion that the 2011 Share Purchase agreement somehow formed the basis of the debt is belied by his own factual allegations. At no point does the Complaint plead that Defendants sought to recover the payment that was made to Paushok under the 2011 Share Purchase Agreement, let alone "with interest." The New York Supreme Court's opinion confirming the Russian Judgment makes no mention of the 2011 Share Purchase Agreement. *See Batbrothers*

*LLC*, 2018 WL 6309075.  As to GPB's conduct occurring overseas, Paushok does not allege that this conduct was related to the 2011 Share Purchase Agreement, nor does he explain how GPB would be able to collect on a transaction entered into between Paushok and Ganbold.

The Complaint also provides no allegations to allow for a reasonable inference that an "obligation or alleged obligation of a consumer to pay money" arose from the 2011 Share Purchase Agreement.  15 U.S.C. § 1692a(5).  The Complaint alleges that, through the 2011 Share Purchase Agreement, Ganbold assumed GEM-related liabilities and transferred money to Paushok in return for stocks in GEM.  Compl. ¶¶ 31-32.  A review of the "Rights and obligation of the Parties" section of the 2011 Share Purchase Agreement, attached by Paushok to the Complaint, confirms this.  *See id.*, Exh. 2 at ¶ 2.1 ("The Seller undertakes to assign shares and associated rights . . . to the Buyer"), ¶ 2.2 ("The Buyer undertakes to pay the Purchase Price to the Seller.").  There is no indication that Paushok incurred any obligations to pay money as a result of the 2011 Share Purchase Agreement.  Characterizing as debt a transaction where Paushok received money in return for company shares contradicts the allegations of the Complaint, the FDCPA's statutory definition of "debt," and common sense.  The fact that Defendants continued to assert their rights to an obligation entered into prior to the 2011 Share Purchase Agreement does not somehow change the nature of that prior obligation, nor did it create a new one.  Paushok therefore has not even pleaded that the 2011 Share Purchase Agreement created a debt.

Lastly, even assuming *arguendo* that Paushok somehow incurred a new obligation as a result of the 2011 Share Purchase Agreement, there is no plausible basis to conclude that it was a consumer debt that falls under the FDCPA.  The Complaint describes in detail the process that led up to the 2011 Share Purchase Agreement.  Paushok initiated arbitration proceedings against the Mongolian government over laws which negatively affected GEM's business.  Compl. ¶¶ 26-27. Paushok alleges that the Mongolian government, in retaliation for commencing this arbitration,

issued a baseless arrest warrant against Paushok and seized GEM's assets. *Id.* Paushok was then contacted by Byamba, who told him that these problems—which stemmed from Paushok's commercial activities related to GEM—would disappear if he sold his GEM shares. *Id.* ¶ 28. Paushok asserts that under this pressure, he agreed to the sale, which culminated in the signing of the 2011 Share Purchase Agreement with Ganbold, who was acting on behalf of Phoenix Sino as its Managing Director. *Id.* ¶ 32. As alleged, this transaction—involving the transfer of corporate shares from Paushok to Phoenix Sino—was commercial in nature. Paushok's argument that he "was later confronted with this alleged obligation to pay from his personal funds," Opposition at 6, does not change the Court's conclusion. Once again, what is relevant is the nature of the debt, not the nature of a defendant's debt collection activities or the source of funds being collected. *See, e.g.*, *Scarola Malone & Zubatov LLP*, 638 F. App'x at 103 (rejecting appellant's argument that "where a disputed debt never actually existed" and there are "collection efforts . . . targeted at an individual" the debt necessarily arises from a consumer transaction); *Nicolaides v. Divine and Serv., Ltd.*, 382 F. Supp. 3d. 251, 255 (E.D.N.Y. 2019) ("[A] debt collector's attempt to collect from an individual does not convert a commercial debt into a consumer debt for purposes of determining the nature of the debt itself."); *Cohen*, 2016 WL 6581233, at *9 (finding that a defendant's state court judgment against the plaintiff individually, rather than his company, did not affect the nature of the debt).

For these reasons, and assuming the truth of all facts alleged in the Complaint, the Court finds that Paushok fails to plausibly plead that Defendants' alleged debt-collection activities arose from a consumer transaction. Because Paushok has failed to provide facts showing that the subject debt is covered by the FDCPA, and indeed all facts alleged point to the opposite conclusion that the debt falls beyond the FDCPA's scope, Paushok's FDCPA claim is dismissed with prejudice.

### D.  The Court Declines to Exercise Supplemental Jurisdiction Over Paushok's State Law Claim

Pursuant to 28 U.S.C. § 1367(c)(3), a court "may decline to exercise supplemental jurisdiction" in the event that it "has dismissed all claims over which it has original jurisdiction." The Court wields this discretion by balancing "the traditional values of judicial economy, convenience, fairness, and comity." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (citation and internal quotations omitted).  If "'all federal-law claims are eliminated before trial,'" however, "'the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  Given that the parties have not yet commenced discovery and only Paushok's state law claim remains, the Court declines to retain jurisdiction over this matter and dismisses the N.Y. G.B.L. § 349 claim without prejudice.  *See Bisono v. Fin. Recovery Servs., Inc.*, No. 18 Civ. 2975 (ADS), 2019 WL 3536608, at *6 (E.D.N.Y. Aug. 2, 2019) (collecting cases where courts have declined to exercise supplemental jurisdiction over a plaintiff's N.Y. G.B.L. § 349 claim after dismissal of FDCPA claims).

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss pursuant to Rule 12(b)(6) are granted as to Paushok's FDCPA claim.  Because the Court finds that any amendment would be futile, the FDCPA claim is dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over Paushok's remaining N.Y. G.B.L. § 349 claim, which is dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

Dated: March 18, 2021
New York, New York

_____
JOHN P. CRONAN
United States District Judge